■ In the Matter of the Arbitration between AETNA CASUALTY & SURETY COMPANY, Appellant, and WILBERT BRUTON et al., Respondents.— Judgment, Supreme Court, New York County, entered January 26, 1977, denying petitioner's application to stay arbitration and directing petitioner to proceed to arbitration of the respondents' claims, affirmed, with $40 costs and disbursements to respondents. In its petition seeking a stay of arbitration, petitioner Aetna Casualty & Surety Company (Aetna) through its counsel states: "Respondents have served a demand for arbitration * * * Claim is made against Aetna regarding an uninsured motorist claim involving an * * * accident of March 7, 1975 * * * At that time, it is claimed that a 1964 Chevrolet owned and operated by respondent, Wilbert Bruton, was involved in an accident with an uninsured motor vehicle * * * Aetna did not provide insurance coverage for the said 1964 Chevrolet at the time of the said accident. Mr. Bruton's 1964 Chevrolet went off Aetna's policy on February 24, 1975. At that time, the 1964 Chevrolet was replaced by a 1971 Plymouth * * * *Since Aetna did not afford insurance coverage for Mr. Bruton's 1964 Chevrolet at the time of the said accident,* the respondents herein do not have a valid uninsured motorist claim against Aetna" (emphasis supplied). Respondent Bruton in his affidavit in opposition to the petition declares that shortly before February 24, 1975, he notified the insurance

broker that he had bought a 1971 Plymouth with the intention that it replace his 1964 Chevrolet under the Aetna policy as soon as necessary repairs were effected upon the Plymouth and that he "would let [the broker] know when the 'new' car was ready, for when it was, [he] intended to take the plates off the 'old' car and put them on the 'new' car." The repair work on the Plymouth was completed in the first week of April 1975 and on April 3, 1975, Bruton transferred the plates, initiated use of the "new" car and informed the broker that he was making the change. Thus, Bruton unequivocally asserts that the replacement of the Chevrolet by the Plymouth under the Aetna policy by the issuance of the FH 1 on February 24, 1975 was premature and without his authorization. Respondents submit a repair bill for the 1971 Plymouth dated March 11, 1975 to show that the auto was not in use at the time of the accident, March 7, 1975. Further, respondents' counsel affirms that medical bills totaling $1,869.50 were submitted to Aetna under the personal injury protection (no-fault) endorsement of the policy on behalf of respondents which claim was paid. *No* reply was submitted by petitioner. Initially, it should be noted that on the instant record there is no dispute that Aetna issued a policy and that Aetna is not controverting the allegation by respondents that they were involved in an accident *with* an uninsured motor vehicle. What is being disputed, i.e., the issue that is raised, is what automobile was covered by the policy at the time of the accident—the Plymouth or the Chevrolet. Thus, no issue is raised respecting the "uninsured motorist" endorsement of the policy which would invoke a preliminary factual issue mandating resolution before it could be determined whether arbitration should proceed (see *Matter of Rosenbaum [American Sur. Co. of N. Y.],* 11 NY2d 310). Clearly, the issue that is raised herein is one for the arbitrator to decide and does not partake of a condition precedent to determining whether arbitration should proceed in the first instance. Most recently, the Court of Appeals in a case where the insurer had issued a policy of insurance on a taxicab, but claimed that shortly before the date of the accident the policy had been canceled, observed: "The insurer characterizes the cancellation issue as a question whether there was a valid agreement to arbitrate, thus a threshold question to be resolved by judicial determination (CPLR 7503, subd [b]). We agree with the courts below that arbitration should not be stayed. If the contention were that a policy of insurance covering the claim had never been issued, a question might be tendered as to whether there was a valid agreement to arbitrate. In the present instance, however, it is not disputed that a policy was initially issued carrying with it the obligation to arbitrate any dispute involving the insurer's liability to pay first-party benefits. The controversy between the parties is whether that contract had been terminated at the time of the accident * * * Under traditional law, where there is a broad arbitration clause, questions as to whether the agreement has been terminated (as distinguished from those as to whether an agreement had ever been made) have customarily been held to be for the arbitrator. Thus, we have recently held that the issue as to whether the contract containing the arbitration clause has been abandoned was for the arbitrator and not the court *(Matter of Macy & Co. [National Sleep Prods.],* 39 NY2d 268, 270-271). Similarly, whether the agreement containing the arbitration clause had been superseded by a later agreement between the parties was for the arbitrator *(Matter of Riccardi [Modern Silver Linen Supply Co.],* 36 NY2d 945, 947). In *Matter of Lipman (Haeuser Shellac Co.)* (289 NY 76 79-80) it was held that whether the contract with the arbitration clause had been canceled should be determined by the arbitrator." *(Matter of Nassau*

*Ins. Co. v McMorris,* 41 NY2d 701, 701-702.) The rationale of the *Nassau Ins. Co.* case is supportive of the conclusion that under the circumstances herein the issue raised by the parties as to what vehicle was insured under the policy at the time of the accident is for the arbitrator to decide. Concur—Lupiano, J. P., Birns and Markewich, JJ.; Silverman, J., dissents in the following memorandum: I would reverse the judgment and remand the matter to the Supreme Court for a hearing to determine whether the automobile involved in the accident was covered by the policy at the time of the accident (as well as any other issues preliminary to arbitration, if there be any such). The substantive issue in this case is whether the automobile involved in the accident was covered by the policy at the time of the accident. The threshold issue is whether this substantive issue is to be decided by the court or by the arbitrator. The majority has held that the issue is one for the arbitrator to decide. I think it is one for the court to decide. This case involves an uninsured motorist claim and thus the uninsured motorist endorsement, rather than a so-called no-fault insurance claim and arbitration clause (Insurance Law, § 675, subd 2). It is established law that the standard uninsured motorist arbitration clause is not a broad arbitration clause ("[t]he arbitration clause was particular, not general", *Matter of Rosenbaum [American Sur. Co. of N. Y.],* 11 NY2d 310, 314), and that "it made arbitrable two fact issues only" (p 314), fault and damages. All other issues, and particularly the existence of conditions precedent to arbitration, are for the court. *(Matter of Rosenbaum, supra.)* The majority relies on the recent decision of the Court of Appeals in *Matter of Nassau Ins. Co. v McMorris* (41 NY2d 701), which gave broad scope to the arbitration clause there involved. But that case involved no-fault insurance and the broad arbitration clause mandated by that statute. (Insurance Law, § 675, subd 2.) The Court of Appeals did not refer in the *Nassau Ins.* case to the rule as to uninsured motorist cases. But the Appellate Division in the *Nassau* case, which reached the same result as the Court of Appeals, expressly recognized the difference. "The no-fault arbitration agreement, in contrast to the uninsured motorist arbitration clause, is very broad and includes threshold issues." *(Matter of Nassau Ins. Co. v McMorris,* 53 AD2d 694, 694-695.) Again, in *Matter of Nassau Ins. Co. v Ebin* (82 Misc 2d 513, 514-515), the court said, "The case of *Matter of Rosenbaum (American Sur. Co. of N. Y.)* (11 NY2d 310), cited in petitioner's brief, clearly is distinguishable * * * The court there held that under this clause only two issues were arbitrable, the fault of the offending motorist and the amount of damages if fault were established. There was no agreement to arbitrate preliminary questions as to insurance coverage. The language of the arbitration provisions under the no-fault law is not so limited, however * * * Accordingly, the rationale of the *Rosenbaum* case has no application to no-fault claims." Whether we agree with the *Rosenbaum* case or not (cf. *Aetna Ins. Co. v Logue,* 68 Misc 2d 841, 842), it is of course the law unless and until the Court of Appeals overrules it. I think it highly unlikely that the Court of Appeals intended by its decision in the *Nassau* case to overrule so important a case as the *Rosenbaum* case without even mentioning it. Special Term did undertake to decide the question of policy coverage on the affidavits alone. It decided that question against petitioner insurance company because it said that the coverage had been "prematurely transferred" from respondent's Chevrolet to the new Plymouth. But the question of responsibility for this premature transfer would seem to depend in large part on the circumstances of that transfer, whether the petitioner insurance company was

acting strictly in accordance with the instructions of the broker and whether the broker was respondent's agent in giving these instructions. These present questions of fact which should be resolved on an evidentiary hearing.